IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| AMANDA MOONEYHAN, | : | |
| Plaintiff, | : | Case No. 3:12-cv- 379 |
| vs. | : | JUDGE WALTER H. RICE |
| JON HUSTED, in his official capacity as the Ohio Secretary of State, *et al.* | : | |
| Defendants | : | |

DECISION AND ENTRY SUSTAINING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER (DOC. #2); DIRECTIVE TO PLAINTIFF AND TO DEFENDANT BETTY J. MARTIN, DIRECTOR, DARKE COUNTY BOARD OF ELECTIONS

Plaintiff Amanda Mooneyhan alleges that she was prohibited, on the basis of her psychiatric disability, from casting a ballot in the November 6, 2012, General Election, because Becky J. Martin, Director of the Darke County Board of Elections, and Jon Husted, the Ohio Secretary of State and chief elections officer, refused to modify their policies, practices, and procedures to accommodate her disability. Plaintiff filed suit against them in their official capacities, alleging violations of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794(a). Doc. #1. This matter is currently before the Court on Plaintiff's Motion for a Temporary Restraining Order, which was filed shortly after the polls closed on November 6,

2012. Doc. #2.

I.  **Background and Procedural History**

Amanda Mooneyhan is a registered voter in Darke County, Ohio. On October 30, 2012, she was hospitalized at Northwest Ohio Psychiatric Hospital in Toledo, which is located in Lucas County, Ohio. She realized that she would not be able to leave the hospital to vote in person in the November 6, 2012, election. Accordingly, on October 31, 2012, with the assistance of Cynthia Hitt, a client rights advocate at the hospital, Mooneyhan mailed an application for an absentee ballot to the Darke County Board of Elections, in accordance with Ohio Revised Code § 3509.03. Hitt Decl. ¶¶ 3-4.

On November 5, 2012, Mooneyhan, having not yet received her absentee ballot, called the Darke County Board of Elections to follow up. She was told that her application had been received and that an absentee ballot had been placed in the mail on November 2, 2012. The staff checked the incoming mail on November 5th and 6th, but the absentee ballot did not arrive. Hitt Decl. ¶¶5-6; Second Mooneyhan Decl. ¶¶6,8.

At approximately 4:50 p.m. on Election Day, November 6, 2012, Hitt and Mooneyhan called Disability Rights Ohio's voting hotline to explain their predicament. Kerstin Sjoberg-Witt, Legal Director for Disability Rights Ohio, then contacted Becky Martin, Director of the Darke County Board of Elections, about the situation. Sjoberg-Witt asked Martin to work with the Lucas County Board of Elections so that Mooneyhan could cast a provisional ballot. Sjoberg-Witt

2

suggested that Martin fax or email an unvoted ballot to the Lucas County Board of Elections, and that two officials from that board then hand deliver the ballot to Mooneyhan at the hospital.

Martin contacted elections counsel at the Secretary of State's Office, who informed her that no provision in Ohio election law allowed for the requested accommodation. Sjoberg-Witt also contacted the Secretary of State's Office directly. Between 6:00 and 6:30 p.m., she learned that no accommodation would be made. Sjoberg-Witt Decl. ¶¶3-13; Martin Aff. ¶7.

At 7:38 p.m., shortly after the polls closed, Disability Rights Ohio filed a complaint and a motion for a temporary restraining order on Mooneyhan's behalf, alleging that, by refusing to make reasonable modifications to policies and procedures to enable her to vote in the General Election, Martin and Husted discriminated against her on the basis of her disability in violation of the ADA and Section 504. Plaintiff asked the Court to grant a temporary restraining order to require Defendants to make reasonable accommodations so that she could receive and submit an absentee ballot. Doc. #2.

Plaintiff received her absentee ballot in the mail on November 7, 2012. Second Mooneyhan Decl. ¶12. During a conference call that same day, the Court directed Plaintiff to complete the absentee ballot and send it to the Darke County Board of Elections, where it would be accepted as a provisional ballot, and would be kept separate from the other absentee and provisional ballots pending a ruling on the motion for a temporary restraining order. Doc. #8. Plaintiff mailed her ballot as directed on November 7, 2012. Second Mooneyhan Decl. ¶13.

3

## II.  Standard of Review

Federal Rule of Civil Procedure 65 allows the Court, in its discretion, to issue injunctions and temporary restraining orders for the purpose of preserving the relative positions of the parties pending a trial on the merits. *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Like a preliminary injunction, a temporary restraining order "is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In determining whether a preliminary injunction or temporary restraining order should be issued, the Court must consider and balance the following four factors: "(1) whether the plaintiff has established a substantial likelihood or probability of success on the merits; (2) whether there is a threat of irreparable harm to the plaintiff; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by granting injunctive relief." *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007) (quotation omitted).[1]

---

[1] The third element is often expressed as "balancing the equities." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). In other words, "the irreparable harm to the plaintiff if there is no preliminary injunction is balanced against any injuries likely to be suffered by the defendant(s) if a preliminary injunction is granted." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

4

### III. Analysis

#### A. Laches

Defendants first argue that Plaintiff's claims are barred by the equitable doctrine of laches, defined as "a negligent and unintentional failure to protect one's rights." *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991). The Court rejects this argument. Laches applies only if Defendants prove: (1) a lack of diligence on Plaintiff's part; and (2) prejudice to Defendants as a result of the delay. *Chirco v. Crosswinds Communities, Inc.*, 474 F.3d 227, 231 (6th Cir. 2007).

Here, Plaintiff acted diligently to protect her rights. She was admitted to the hospital on October 30, 2012, and requested an absentee ballot the following day, three days before the November 3, 2012, deadline. *See* Ohio Revised Code § 3509.03 (setting a deadline of noon on the third day before the day of the election for applying for absentee ballots). On November 5, 2012, having not yet received her absentee ballot, she followed up with the Darke County Board of Elections, and was told that it was mailed on November 2, 2012. Through no fault of Plaintiff, the ballot was not received by her until November 7, 2012.

Ohio law requires absentee ballots returned by mail to be postmarked the day before the election. Ohio Revised Code § 3509.05. If the ballot had arrived on November 5th, Mooneyhan would have completed it and mailed it that same day. Second Mooneyhan Decl. ¶ 9. In the alternative, Ohio law permits an absentee ballot to be hand-delivered by the voter or a family member to the director of the board of elections not later than the close of the polls on the day of the election.

5

Ohio Revised Code § 3509.05. Therefore, if the ballot had arrived in the mail on November 6th, Mooneyhan could have completed it and had hospital staff drive to Darke County to hand deliver it. Second Mooneyhan Decl. ¶10; Hitt Decl. ¶8.[2] In either situation, her absentee ballot would be deemed timely filed.

On Election Day, after learning that the absentee ballot had not yet arrived, Plaintiff contacted the Disability Rights Ohio voter hotline to request assistance. Disability Rights Ohio immediately contacted local and state elections officials to request a reasonable accommodation. Plaintiff filed suit within a couple of hours after learning that Defendants had denied her requested accommodation. Even though the suit was not filed until shortly after the polls closed, it cannot be said that Plaintiff failed to diligently pursue her right to vote.

Moreover, Defendants cannot show inequitable prejudice. They argue only that the State has an interest in running a smooth election and that last minute injunctions affecting the election process are disfavored. Defendants fail to explain how the very short delay in filing suit makes it any more difficult to defend against Plaintiff's claims, or how granting the requested relief, *i.e.*, counting Plaintiff's vote along with the other absentee or provisional ballots, is in any way disruptive of the election process. Ohio law already contemplates that timely-postmarked absentee

---

[2] Because Ohio Revised Code § 3509.05(A) provides that only the voter or certain family members of the voter can hand deliver an absentee ballot, this would have required a slight accommodation to existing law. Under the Supremacy Clause of the United States Constitution, a State has an obligation "to protect federally guaranteed civil rights as zealously as would a federal court." *Rachel v. Georgia*, 342 F.2d 336, 342 (5th Cir. 1965). To the extent that state law conflicts with federal law, state law must give way. *Swift & Co. v. Wickham*, 382 U.S. 111, 120 (1965).

ballots received through the tenth day after the election will be counted on the eleventh day. Ohio Revised Code § 3509.05(B)(1). Under these circumstances, the Court concludes that Plaintiff's request for equitable relief is not barred by the doctrine of laches.

### B. Factors to Be Considered in Issuing Temporary Restraining Order

#### 1. Substantial Likelihood or Probability of Success on the Merits

The first factor to be considered in determining whether to issue a temporary restraining order is whether Plaintiff can establish a substantial likelihood or probability of success on the merits of her claims. She has asserted claims of disability discrimination under Title II of the ADA and Section 504 of the Rehabilitation Act.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In a similar vein, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). As the Sixth Circuit explained in *S.S. v. Eastern Kentucky University*, 532 F.3d 445, 452-53 (6th Cir. 2008), because these two statutes provide nearly the same rights and remedies, the claims may be analyzed

together.

In order to prevail under either statute, Plaintiff must show that: (1) she is disabled; (2) she is "otherwise qualified" for participation in the program; and (3) she has been subjected to discrimination or excluded from participation in the program because of her disability. *Id.* at 453. There is no question that Plaintiff suffers from a disability and that, as a registered voter, she is qualified to vote in the General Election. At issue is whether Defendants discriminated against her on the basis of her psychiatric disability.

The Court finds that it is substantially likely that Plaintiff will prevail on the merits of her claims. Federal regulations implementing Title II provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

In this case, Plaintiff requested the Darke County Board of Elections to fax or email an absentee ballot to the Lucas County Board of Elections so that Lucas County elections officials could take the ballot to the hospital where she was confined. Defendants, however, refused to make the requested accommodation. That accommodation was necessary to ensure that Plaintiff had an equal opportunity to exercise her right to vote. Moreover, it would not have fundamentally altered the nature of the voting process.

The case of *Ray v. Franklin County Board of Elections*, No. 2:08-cv-1086, 2008 WL 4966759 (S.D. Ohio Nov. 17, 2008), is particularly instructive. In *Ray*, the plaintiff, disabled and bedridden, voted by absentee ballot. Following the election, the Franklin County Board of Elections determined that her ballot was somehow deficient. In accordance with a Directive issued by the Secretary of State, the board notified her by telephone that she had three days to appear in person to cure the deficiency or her vote would not be counted. She explained that she was bedridden and unable to appear in person, but the board refused to send a representative to her house to cure the deficiency.

The plaintiff filed suit alleging that the Directive's in-person requirement discriminated against homebound disabled voters and denied them an equal opportunity to have their votes counted. She sought a temporary restraining order, requiring election officials to go to her house to cure the deficiency. The court granted her motion, finding it likely that she would prevail on the merits of her ADA claim. The court concluded:

> If Defendants fail to make a modification to the in-person eligibility criteria outlined in Directive 2008-109, Plaintiff, solely by reason of her disability, will be denied the opportunity to cure any defects. Ultimately, Plaintiff will be excluded from participating in the election because of her disability while others who are similarly situated, but not homebound and disabled, will not.

*Id.* at *5.

This case is analogous. Under normal circumstances, if a voter requests an absentee ballot but does not receive it in time, that voter may go to his or her polling location on Election Day to cast a provisional ballot. Ohio Revised Code

9

§ 3509.09(B)(1). Plaintiff, however, was confined to the hospital and, because of her disability, was unable to travel to Darke County on Election Day to cast a provisional ballot. She was therefore denied an option available to similarly-situated non-disabled voters. Accordingly, she requested an accommodation so that she would not be excluded from participating in the election. She asked Defendants to modify their policy of not faxing or emailing absentee ballots. The requested accommodation was necessary to avoid discrimination on the basis of her disability.

Under the ADA, Plaintiff's request had to be granted unless Defendants could demonstrate that the requested modification "would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7). Defendants have failed to do so. As Plaintiff notes, Ohio law already allows local boards of elections to send absentee ballots via fax, email, or internet to members of the military and overseas voters. Ohio Revised Code § 3511.021(A)(2). Moreover, Ohio law also expressly permits local board of elections members to hand-deliver an absentee ballot to a person who is disabled or confined. Ohio Revised Code § 3509.08(A). In light of these statutory provisions, it cannot be said that Plaintiff's request would have fundamentally altered the nature of the voting process.[3]

For these reasons, the Court finds that Plaintiff has established a substantial likelihood or probability of success on the merits of her claims.

---

[3] Nor, for that matter, will the Court's directive to Defendants that Plaintiff's ballot be counted in the final tally fundamentally alter the nature of the voting process.

10

### 2. Irreparable Harm

The next factor to be considered is whether Plaintiff will suffer irreparable harm if the Court fails to grant the relief requested. It appears to be undisputed that Plaintiff will suffer irreparable harm if her vote is not counted. As the Supreme Court held in *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964), "[n]o right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live." Denial of the right to vote is clearly irreparable harm.

### 3. Substantial Harm to Others if Court Grants Requested Relief

The Court must next consider whether others will suffer substantial harm if the Court grants the relief requested. Plaintiff simply asks that her absentee ballot, ordered to be considered provisional by the Court, be counted even though it was postmarked one day late. The Court cannot fathom how granting the Plaintiff's right to vote would result in substantial harm to anyone.[4]

---

[4] Defendants argue that it would have been an incredible burden to require Darke County Board of Elections officials to travel 284 miles round trip to Toledo on Election Day to personally deliver Plaintiff's absentee ballot. The Court agrees that such a requirement would be unduly burdensome. This, however, is not the accommodation that Plaintiff requested on Election Day. Instead, Plaintiff proposed that the Darke County Board of Elections fax or email her absentee ballot to the Lucas County Board of Elections. Lucas County Board of Elections officials could then personally deliver it to her, watch her complete it, and return it to the Darke County Board of Elections via fax or email. This would have been no more burdensome than the already-established procedures for personal hand delivery of an absentee ballot to a disabled or confined voter. *See* Ohio Revised Code § 3509.08(A).

11

### 4. Public Interest

Finally, the Court must consider whether granting the requested relief is in the public interest. Defendants argue that allowing Plaintiff to cast her absentee ballot a day after the polls close undermines the finality of the election. As Plaintiff points out, however, local boards of elections are not required to complete their official canvass until twenty-one days after the election. Ohio Revised Code § 3505.32(A). Moreover, any absentee ballots postmarked in a timely manner "that are received after the close of the polls on election day through the tenth day thereafter shall be counted on the eleventh day." Ohio Revised Code § 3509.05(B)(1). In light of these statutory provisions, allowing Plaintiff to cast her absentee/provisional ballot one day after the election cannot be said to compromise the finality of the election.[5]

---

[5] Following the drafting of this Decision and Entry, Defendants filed a Notice of Supplemental Authority, Doc. #11, noting that earlier today, the Sixth Circuit Court of Appeals granted Husted's emergency motion for a stay pending appeal in the case of *Northeast Ohio Coalition for the Homeless v. Husted*, No. 12-4354. In that case, the district court found that a Directive issued by Husted, concerning provisional ballots, violated a previous consent decree and state law. On November 13, 2012, one week after the General Election, the district court therefore enjoined the application of that Directive to provisional voters. In granting the motion for a stay pending appeal, the Sixth Circuit stated, "[c]hanging the rules by which votes are counted after they have already been cast compromises the interest of Ohio, the Secretary, and the general public in fair and orderly election procedures." Nov. 16, 2012, Order, at p. 11.

This case is clearly distinguishable. In *Northeast Ohio Coalition for the Homeless*, the district court's order affected the way that numerous provisional ballots were to be counted. In stark contrast, the Court's order in the instant case does not "change the rules by which votes are counted." Rather, it is an equitable remedy that affects only one absentee ballot, a ballot that was untimely filed only because Defendants refused to make a reasonable accommodation on Election Day.

12

Defendants also contend that allowing Plaintiff to cast her vote a day late, when she already knows the projected outcome of the election, gives her the benefit of hindsight, and dilutes the votes of those who cast their ballots in a timely manner. While this may be true, when balancing these considerations against the strong public interest in providing Plaintiff with an equal opportunity to exercise her right to vote, the clear preponderance rests with Plaintiff's exercise of that right to vote.

Defendants also suggest that allowing Plaintiff to submit a ballot after the close of the election might create an equal protection problem since Plaintiff is being treated differently than others. They overlook the irony in this argument. But for the fact that Defendants denied the requested accommodation on Election Day, denying her an equal opportunity to vote, Plaintiff would have been able to cast her vote in a timely manner, and there would be no need for the Court to consider whether her absentee ballot, postmarked a day late, should be counted. Under the circumstances presented here, the Court finds that it is in the public interest to count Plaintiff's vote.

## IV. Conclusion

Having fully considered each of the relevant factors and having determined that circumstances clearly demand granting the relief requested, the Court SUSTAINS Plaintiff's Motion for a Temporary Restraining Order, Doc. #2, and orders the Director of the Darke County Board of Elections to count Plaintiff's absentee/provisional ballot even though it was postmarked a day late. The Director

13

of the Darke County Board of Elections shall notify this Court, by affidavit, that Plaintiff's absentee/provisional ballot has been received, segregated as ordered by the Court, and counted in the final tally of votes cast for all applicable contests.

Counsel for Plaintiff shall notify the Court within ten calendar days concerning how Plaintiff wishes to proceed with this litigation, if at all, and whether she wishes to pursue her request for attorneys' fees.

Date: November 16, 2012

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record

Becky Martin, Director, Darke County Board of Elections
300 Garst Ave.
Greenville, OH 45331